IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00135-M

KEVIN COPPAGE,

    Plaintiff,

v.

CITY OF RALEIGH,

    Defendant.

ORDER

Before the court is Defendant's Motion for Partial Dismissal of Amended Complaint [DE 27]. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for the Plaintiff's purported failures to allege (in part) a timely discrimination claim and to plausibly allege a hostile work environment claim in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons that follow, the motion is granted.

## I.    Statement of Facts

The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Amended Complaint (DE 24), which the court accepts as true pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Defendant hired Plaintiff to work for the Raleigh Fire Department in May 1994. Since that time, Plaintiff has received numerous commendations and awards; for example, in 2009, Plaintiff was recognized as "Firefighter of the Year" by the American Legion, Raleigh Post 1. In addition, Plaintiff has been promoted from firefighter to captain, then ultimately from captain to his current

position as a division chief, only the third African American to receive such promotion in the Fire Department's history. During his time as Captain, he also served as a Recruit Academy instructor where he trained both new recruits and veteran firefighters. Since his last promotion in 2017, Plaintiff has been the only African American Division Chief employed by the Defendant.

During this period, Plaintiff also earned his master's degree in Crisis Management and Disaster Management, and he is currently pursuing his doctorate in Executive Leadership and Organizational Development. Plaintiff believes he has more relevant educational and professional experience than any other Division Chief in the Fire Department.

In February 1963, the Fire Department hired its first African American firefighter, Larry Gene Williams, who resigned three years later. The Fire Department's second African American firefighter, Welton Jones, was hired in March 1963; he was interviewed in 2007 during which he stated, "[the Fire Department] kept hiring whites . . . Then, when I would complain about it, they would stick a black in every now and then . . . There are stations in Raleigh right now where there is not one black . . . I'm going to fight it all the way." At the time Mr. Jones gave his interview, there were 549 employees in the Fire Department, 81 of which (14%) were minorities. Twelve years later, on December 22, 2019, there were 621 employees in the Fire Department, 81 of which were minorities.

In or about 2012, Plaintiff applied for the position of Training Academy Coordinator, but then-Assistant Chief Brad Harvey hired a white male with less experience and fewer qualifications than Plaintiff, and who Plaintiff had previously trained. Later that year, Plaintiff applied for the position of Hazardous Material Coordinator, but Assistant Chief Harvey hired a white male with less experience and fewer qualifications than Plaintiff, and who Plaintiff had previously trained. In or about 2015, Plaintiff communicated to his supervisors that he wanted to be considered for

the position of Safety Officer with the Fire Department, but Assistant Chief Harvey (and others) hired a white male with less experience and fewer qualifications than Plaintiff, and who Plaintiff had previously trained. In or about 2017, Plaintiff communicated to his supervisors that he wanted to be considered for the position of Division Chief of Training, but then-Chief John McGrath hired a white male with less experience and fewer qualifications than Plaintiff, and who Plaintiff had previously trained. Plaintiff believes that Harvey, in his role as Assistant Chief, did not promote any African Americans when he had discretion to make any such decisions. Harvey retired from the Fire Department in 2017. After Harvey's retirement, Plaintiff applied for and was promoted to the division chief position.

On or about March 4, 2019, when Plaintiff was off duty, he was charged with "driving under the influence" ("DUI"); he was eventually convicted of the charge on or about July 10, 2019. On or about March 21, 2019, the Fire Department's Office of the Fire Chief published an Administrative Directive titled, "Impaired Driving Offenses," which directed that "[a]n employee ... [who] is eligible for promotion on a concurrent promotional list will be ineligible for the current promotion if charged and convicted with an impaired driving offense." While the Administrative Directive was published with an effective date of March 1, 2019, the Office of the Fire Chief issued two other policies on March 21, 2019 that had effective dates of March 21, 2019. Plaintiff believes that the Office of the Fire Chief had never issued new policies with effective dates prior to the publication date and that the purpose of backdating the "Impaired Driving Offenses" Administrative Directive was to provide a racially neutral pretext for denying Plaintiff further promotions. Plaintiff also believes that the Fire Department has promoted white firefighters who have been subject to the March 2019 Administrative Directive.

In October 2019, Plaintiff communicated to his supervisors that he wanted to be considered

3

Case 5:20-cv-00135-M    Document 37    Filed 04/01/21    Page 3 of 14

for the role of Assistant Chief, which requires the following qualifications: (a) bachelor's degree or equivalent (applicants may substitute additional relevant experience for the required education); (b) at least ten years of progressively responsible relevant experience (applicants may substitute additional relevant education for the required experience); (c) knowledge of spreadsheet software and word processing software; and (d) a regular driver's license (Hazmat operations preferred, Firefighter II preferred, Instructor certification preferred, Inspector certification preferred). Plaintiff met or exceeded all of the required qualifications to serve as Assistant Chief at the time he sought the position but, citing Plaintiff's March 2019 DUI charge, Defendant did not promote Plaintiff and, instead, promoted a white male, Ronny Mizell, to the position. Mr. Mizell had less relevant educational experience, fewer relevant credentials, and less professional experience than Plaintiff. Plaintiff believes that Mr. Mizell did not meet the requirements for the position as stated in the job description.

In or about November 2019, Defendant rehired Brad Harvey to serve as the city's Interim Fire Chief. On or about November 29, 2019, Plaintiff applied for the position of Division Chief of Service, which required the following qualifications: (a) a bachelor's degree in fire science or directly related field, six years of fire service experience and two years of supervisory experience; and (b) depending on assignment, some positions may require: a valid North Carolina Class C Driver's License with a satisfactory driving record and additional specialty 9 training and North Carolina firefighting, emergency medicine, and/or hazardous materials response certifications. Plaintiff met or exceeded all of the required qualifications to serve as a Division Chief of Service at the time he sought the position. Citing Plaintiff's March 2019 DUI charge, Defendant did not promote Plaintiff but, instead, Interim Chief Harvey hired a white male, Alan Wilson, who had less experience and fewer qualifications than Plaintiff, and who Plaintiff had previously trained.

4

Plaintiff believes that Mr. Wilson did not actually seek the position, but he was recruited by Harvey to prevent the Plaintiff from securing the position.

Plaintiff believes his charge and conviction for driving under the influence has no effect on his competency or ability to perform any of the jobs for which he has applied since March 2019. On or about December 21, 2019, Plaintiff filed two grievances with Defendant, complaining of discrimination in Defendant's promotions practice and specifically stating that Defendant's retroactive application of its Impaired Driving Offenses Administrative Directive constituted harassment and was a result of race discrimination. Defendant has not responded to these grievances.

## II.   **Procedural History**

Based on these allegations, Plaintiff asserts claims for race discrimination and for a hostile work environment (or, "harassment"), both in violation of Title VII. Compl. at ¶¶ 81-94. Defendant seeks dismissal of a portion of Plaintiff's first claim, to the extent Plaintiff bases it on conduct occurring before March 6, 2019, the date set forth in Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). Defendant also argues that dismissal of Plaintiff's hostile work environment claim is proper to the extent Plaintiff relies on conduct before March 6, 2019 and, otherwise, for Plaintiff's failure to state a plausible claim.

Plaintiff counters that his claims are not based on conduct alleged to have occurred before March 6, 2019, and his hostile work environment claim is both plausible and viable, in that it falls within the scope of his EEOC charge. Defendant replies that, under prevailing law, Plaintiff has not exhausted his administrative remedies, as required, since the EEOC charge does not encompass the hostile environment claim; in the alternative, Defendant contends the conduct Plaintiff alleges for his harassment claim is not objectively severe or pervasive.

5

## III. Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*,

550 U.S. at 557)).

**IV. Analysis**

The court finds the Plaintiff's concession—that he does not base his first claim for relief on conduct alleged to have occurred before March 6, 2019—resolves the portion of Defendant's motion seeking partial dismissal of Claim One. The motion will be granted in that respect.[1] The court will, therefore, proceed to determine whether Defendant demonstrates that dismissal of Claim Two is proper.

A. <u>Did the Plaintiff Exhaust Administrative Remedies as Required for Claim Two?</u>

Before a plaintiff may assert a Title VII claim in federal court, he must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014) (citation omitted). The Supreme Court has recently determined that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one," not a jurisdictional prerequisite. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851, 204 L. Ed. 2d 116 (2019). Therefore, Defendant has properly raised this defense pursuant to Rule 12(b)(6) at this stage of the litigation.[2]

The allegations contained in an administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *Hentosh*, 767 F.3d at 416 (citing *King v. Seaboard*

---

[1] To be clear, to the extent that Plaintiff alleges discrete acts of discrimination prior to June 23, 2019 (180th day prior to filing of charge of discrimination), any claim based on such acts is dismissed as untimely. *See Belton v. City of Charlotte*, 175 F. App'x 641, 652 (4th Cir. 2006) (citing 42 U.S.C. § 2000e–5(e)(1)). This finding does not affect the court's permissible consideration of Plaintiff's alleged employment history for the present analysis. *See Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 222 (4th Cir. 2016).

[2] In addition, courts may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the court considers a copy of Plaintiff's charge of discrimination, which is attached to the operative pleading and of which no party disputes its authenticity.

*Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'")); *see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). "Only those discrimination claims stated in the initial charge, those reasonably related to the original [administrative] complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Tonkin v. Shadow Mgmt., Inc.*, 605 F. App'x 194, 194 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)); *see also Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.").

Plaintiff's charge of discrimination, a copy of which is attached to the Amended Complaint, states in its "particulars" section: "Since on or around March 6, 2019, I believe I have been harassed and discriminated against, because of my race, Black. I have inquired/expressed interest in at least seven (7) positions, but I have been overlooked for advancement opportunities." DE 24 at 15. Defendant argues that "[n]othing in Plaintiff's Charge suggests that he was denied promotions due to an invidious practice not to promote African Americans" and "[n]o hostile work environment claim would naturally have arisen from the EEO's investigation of this Charge." Plaintiff counters that Defendant was placed on notice of his harassment complaint, both by the charge itself and by formal grievances Plaintiff filed with Defendant the day after he filed the

charge of discrimination. Defendant replies that EEOC charges mentioning only discrete acts of discrimination and charges that reference occurrences different than those alleged in subsequent litigation are insufficient to support allegations of a hostile work environment.

The court finds Plaintiff's harassment claim exceeds the scope of his charge of discrimination and, thus, Plaintiff has failed to exhaust the required administrative remedies for his second claim for relief. The Fourth Circuit instructs that a hostile work environment prohibited by Title VII exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]o prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Id.* (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)).

In arguing the plausibility of his hostile work environment claim, Plaintiff asserts that his claim is supported by allegations in the Amended Complaint demonstrating not only that he has been repeatedly denied career advancement since 2012 while promotions were offered to less qualified white employees, but also that other non-white firefighters have suffered the same treatment as evidenced by the fact that "the percentage of minority employees in the Department has declined over the last twelve years." Resp. at 7, DE 32. Plaintiff also alleges that the Administrative Directive related to "Impaired Driving Offenses" has been applied to deny him promotions but has not been likewise applied to white employees. Am. Compl. ¶ 60.

9

Plaintiff's charge of discrimination lists only the discrete acts of failures to promote and does not mention Defendant's treatment of other non-white firefighters, statistics concerning non-white employees in the Department, or the application of the Administrative Directive to Plaintiff or any other employee. The Fourth Circuit has "held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct."[3] *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile [work] environment claims are different in kind from discrete acts."). Allegations of discrete acts such as failures to promote, demotions, or terminations are not allegations of a hostile work environment. *Id.* at 511 n.2. Moreover, a reasonable investigation into Plaintiff's "expressed interest in at least seven (7) positions" for which he had "been overlooked" could not be expected to lead to discovery of failures by the Defendant to promote other non-white employees or of the application of the Administrative Directive to Plaintiff but not white employees. *See id.* at 512. Finally, Plaintiff's mention of "harassment" in the charge is itself insufficient since it is a "broad" term that may "encompass a limitless number of other factual worlds." *Id.* The court must conclude that the

---

[3] This court notes a subsequent opinion by the Fourth Circuit addressing whether discrete acts may be considered for purposes of determining the timeliness of a hostile environment claim. *See Guessous*, 828 F.3d at 223 ("the issue in this case is whether non-time-barred discrete acts can be considered part of the 'series of separate acts that collectively' create a hostile work environment, . . . thus rendering a hostile-environment claim timely under the continuing-violation doctrine."). In *Guessous*, the court reversed a district court's opinion rejecting a continuing violation argument "because . . . discrete acts are separately actionable, [so] they cannot comprise part of a hostile work environment claim." The Fourth Circuit concluded, "So long as the act is part of the pattern of discriminatory treatment against the employee, then that act should be sufficient for purposes of the continuing-violation doctrine, even if the act would otherwise qualify as a discrete act that is independently actionable." *Id.* Because *Guessous* involved an analysis of a timeliness (continuing violation) defense rather than a failure to exhaust defense, this court finds *Guessous* distinguishable in analyzing the defense raised to Plaintiff's second claim for relief.

factual allegations in the Amended Complaint are not reasonably related to the factual allegations in the charge of discrimination and, therefore, the Plaintiff's hostile work environment claim has exceeded the scope of the EEOC charge. As such, Plaintiff fails to state a plausible second claim for relief having failed to exhaust required administrative remedies.

B. Does the Plaintiff State a Plausible Claim for Hostile Work Environment?

Defendant argues that, even if Plaintiff had sufficiently exhausted administrative remedies, he has failed to allege plausibly that Defendant's conduct was objectively severe or pervasive as necessary to state a plausible claim for hostile work environment. Plaintiff counters that he need not plead a *prima facie* case and that his allegations are sufficient at this stage of the litigation.

Establishing the third element of a hostile work environment claim—that the offending conduct was "sufficiently severe or pervasive to alter the conditions of [ ] employment and create an abusive work environment"—requires that "the plaintiff show that the work environment was not only subjectively hostile, but also objectively so." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (citing *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Such proof depends upon the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Defendant cites a Fourth Circuit opinion issued in August 2019 to support its argument that an employer's failures to promote are insufficient to rise to the level of a hostile work environment. Mot. at 15-16 (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019)). Plaintiff counters that *Perkins* is distinguishable because it involved an analysis of a Rule 56 motion rather than a Rule 12(b)(6) motion. The court disagrees with Plaintiff; a court may find as a matter of law that either proffered evidence pursuant to Rule 56 or allegations taken as true pursuant to Rule

11

12(b)(6) do not rise to the level of severe or pervasive conduct. In fact, in *Bonds*, the Fourth Circuit reviewed an order dismissing a hostile work environment claim under Rule 12(b)(6) by citing prior opinions evaluating such claims under Rule 56. *See Bonds*, 629 F.3d at 385 (citing *Sunbelt Rentals*, 521 F.3d at 315 and *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008)). Referencing two Supreme Court opinions—one evaluating a Rule 56 order and the other a judgment post-trial—the court concluded that the plaintiff's allegations, taken as true, "f[e]ll well short of alleging an abusive working environment." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) and *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)).

Likewise, here, the court finds as a matter of law that Plaintiff's allegations, taken as true, reflecting that he endured a history of denials for promotion while less qualified white firefighters were promoted and, in 2019, was denied two opportunities for promotion based on application of the Administrative Directive, which may not have been applied to white firefighters seeking promotion, together with allegations that Plaintiff was promoted to Captain in 2006 and to Division Chief in 2017, do not rise to the level of a hostile work environment, which is described by the Fourth Circuit as a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d at 277. The alleged conduct, while serious, is neither severe nor frequent (four promotion denials between 2012 and 2017 and two denials in 2019 based on the Administrative Directive), not physically threatening, and is not "[so] extreme [as] to amount to a change in the terms and conditions of employment." *Sunbelt Rentals*, 521 F.3d at 315 (4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In other words, Plaintiff has failed to allege that he suffered "situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is,

12

instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* at 316 (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007)); *see also Perkins*, 936 F.3d at 209 (evidence of disparate treatment in the application of benefits, rankings, shift assignments, approval of overtime, and enforcement of workplace rules, together with denials of several promotion requests by Black employee while whites were granted promotions, was insufficient to rise to the level of the severity and pervasiveness required to constitute a hostile workplace).

Accordingly, even if Plaintiff had exhausted his required administrative remedies for his second claim for relief, Plaintiff fails to allege a plausible claim for hostile work environment in violation of Title VII and his claim is, therefore, dismissed.

## V.  Conclusion

Plaintiff concedes that he does not seek recovery for alleged discriminatory acts that occurred prior to June 23, 2019; consequently, to the extent that the Amended Complaint may be construed to allege Title VII claims based on such conduct, the claims are dismissed. In addition, Plaintiff fails to demonstrate he exhausted his administrative remedies and, alternatively, he fails to state a plausible claim for hostile work environment in violation of Title VII; thus, Plaintiff's second claim for relief is dismissed. Proceeding in this case is Plaintiff's first claim for relief based on Defendant's conduct that occurred on or after June 23, 2019.

13

Case 5:20-cv-00135-M   Document 37   Filed 04/01/21   Page 13 of 14

Defendant's Motion for Partial Dismissal of the Amended Complaint [DE 27] is GRANTED as set forth herein.

SO ORDERED this 1st day of April, 2021.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE